IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

SUSAN YEALEY,

               Plaintiff,

v.

NANCY BERRYHILL,
Acting Commissioner of Social Security,

               Defendant.

OPINION AND ORDER

16-cv-418-slc

---

      Plaintiff Susan Yealey is seeking review of a final decision by defendant Nancy Berryhill, Acting Commissioner of Social Security, denying her claim for disability insurance benefits under the Social Security Act. 42 U.S.C. § 405(g). Yealey applied for benefits on November 27, 2012, alleging that she had been disabled since March 1, 2008 as a result of various types of neuropathy, depression, anxiety, and chronic pain and fatigue. Admin. Rec. (AR) 246, 249. After the local disability agency twice denied her claim, Yealey had two hearings before an administrative law judge (ALJ), who issued a decision on September 23, 2015, finding that Yealey was not disabled at any time between her alleged onset date and the date that she was last insured, December 31, 2010. AR 17-28. The Appeals Council subsequently denied Yealey's application for review, making the ALJ's decision the final decision of the Commissioner. Throughout the administrative proceedings, Yealey was represented by a non-attorney representative, Tammy Kellerman.

      Yealey contends that the ALJ's failure to advise her of her right to counsel and obtain a valid waiver of counsel resulted in prejudice because the ALJ failed to develop the record adequately with respect to her non-severe mental impairments, pain, and medication side effects.

For the reasons explained below, I conclude that the ALJ did not obtain a valid waiver of counsel in this case and that the Commissioner has not met her burden of demonstrating that the record was fully and fairly developed with respect to certain mental limitations resulting from Yealey's non-severe mental impairments, pain, and medication side effects, resulting in prejudice to Yealey. Accordingly, I am reversing the Commissioner's decision and remanding for further proceedings consistent with this opinion.

The following facts are drawn from the Administrative Record (AR), filed with the Commissioner's answer in this case.

## RECORD FACTS

**I. Relevant Medical History**

Plaintiff Susan Yealey has a history of chronic pain as a result of pudendal nerve entrapment. AR 853. On March 26, 2007, she underwent a surgical procedure that reportedly relieved a lot of pelvic pain that she was having. AR 539, 544, 546. On December 21, 2007, Yealey's physician removed pelvic and abdominal adhesions to address other pelvic pain that she was having. AR 537. Yealey's pain improved in early 2008 and completely resolved by February 2008. AR 534-36. Progress notes dated June 29, 2009 and May 17, 2010 indicate that Yealey's pudendal neuropathy was much better. AR 531-33. On June 7, 2010, she had a carcinoma removed from her vulva. AR 529. Although the surgeries improved her condition at least temporarily, they did not completely relieve her pain. AR 851. (Later medical records indicate that Yealey's condition worsened again after 2011, but that is after her date last insured.) Yealey took opiate painkillers four to six times a day on a regular basis for many years. AR 561,

2

567.

Yealey also suffers from low back pain as a result of a motor vehicle accident that occurred in October 2008. AR 444. A magnetic resonance imaging study taken of her cervical and lumbar spine in December 2008 revealed only mild findings. AR 56-57. Chiropractic and massage treatments improved her symptoms significantly but she continued to have some low back pain that she reportedly managed "fairly well" until September 2011. *Id.*

In a function report dated March 7, 2013, Yealey reported having problems with her memory, completing tasks, concentration, and following instructions, as well as "OCD like" side effects from her medications. AR 269, 271.

## II. Administrative Proceedings

### A. June 3, 2014 Hearing

Yealey testified that although she experienced some relief in 2006 and 2007 from the surgical treatment she received for pudendal neuropathy, her pain returned either after she fell on ice in 2008 or after her motor vehicle accident in October 2008. AR 53-55, 64. When Yealey began to experience symptoms of pudendal neuropathy again in 2010 or 2011, she returned to Dr. Analak, who told her that she had damaged her nerves permanently and gave her injections for pain. AR 65. She has taken several medications—including pain medication, gabapentin, Klonopin, Cymbalta, and Amblify—since 2008 and they make her sleepy and do not relieve all of her pain. AR 65.

Dr. Howard McClure, a medical expert, testified that this case was difficult to analyze because Yealey's principal complaint is chronic pelvis and buttock pain for which she has been

3

taking narcotics four times a day for several years. AR 49-50. He explained that her pain was not "clearly orthopedic" but that there are no good objective markers for pelvic pain "so it sort of boils down to a question of credibility." AR 50. Dr. McClure testified that he did not see anything in the record concerning side effects from Yealey's medications. AR 60-61. Based on his review of the record, Dr. McClure concluded that Yealey did not have any persistent limitations in her ability to work for any 12-month period between March 1, 2008 and December 31, 2010. *Id.*

The ALJ expressed concern about the record not having objective clinical findings to support Yealey's subjective complaints of pain, particularly with respect to her pudendal neuropathy. AR 52. There also was some discussion by the ALJ and Tammy Kellerman (Yealey's non-attorney representative) about whether the record was complete with respect to studies and evaluation of Yealey's pudendal neuropathy because Yealey's main treating physician had retried and placed his records in storage. AR 52-53. Kellerman indicated that there were no treating physician opinions because Yealey's doctor would not complete an RFC. AR 59. Although Yealey insisted at the hearing that her pudendal neuropathy came back before her last insured date in 2010, she and Kellerman admitted that the record before the ALJ did not document that fact. AR 69. Kellerman indicated that she would be submitting more records. *Id.*

### B. May 27, 2015 Hearing

After receiving additional medical records from Yealey, the ALJ clarified with Yealey that she had been seeing Dr. Druffner after her automobile accident toward the end of 2008, but the

physical therapy that Dr. Druffner had recommended was not working, so Yealey went to see a chiropractor instead for manipulation and massage therapy. AR 80-81. Yealey testified that she got chiropractic treatment between 2008 and 2010 for pain but they were just "treating symptoms" because no one had told her that the pain was due to the return of her pudendal neuropathy. AR 83. Yealey received no additional treatment for pudendal neuropathy until 2010, when she had two perianal lesions removed. Yealey did not start treatment again until 2012, when she began seeing Dr. Young, her current treating physician. AR 81-83.

Dr. Melvin Harter, a medical expert, testified that from October 27, 2008 and well into 2009, Yealey was being treated for conditions resulting from her car accident, including neck and back pain and headaches. AR 89-92. He testified that the record did not show that Yealey was being treated for pudendal neuropathy between 2008 and December 2010. AR 93. Dr. Harter testified that based on his review of the record, Yealey did not have any persistent limitations in her ability to work for any 12-month period between March 1, 2008 and December 31, 2010. *Id.*

### C. Post-Hearing Interrogatories

After the May 2015 hearing, the ALJ issued interrogatories to a neurologist and a vocational expert. Dr. Kenneth Cloniger responded on July 8, 2015, and rated Yealey's ability to perform work-related activities in the following manner: lifting and carrying up to 20 pounds frequently and up to 50 pounds occasionally; sitting one hour at a time up to four hours a day; standing and walking two hours at a time up to four hours a day; frequent reaching, handling, fingering, feeling, and pushing/pulling; frequent operation of foot controls; no climbing ladders

5

or scaffolds; occasional climbing stairs and ramps, stooping, kneeling, crouching, and crawling; frequent balancing; and some environmental limitations. AR 25, 844-49.

On August 16, 2015, Ronald Morrell, a vocational expert, reported that Yealey had past relevant work experience as an officer manager, which is a sedentary, skilled position that Yealey performed at a light exertional level. AR 27, 328-31. Morrell noted that Yealey's RFC allowed her to perform sedentary work and less than a full range of light work and that such an individual would be able to perform work as an office manager as that position was described in the Dictionary of Occupational Titles and as normally performed. Morrell also noted that an "office manager normally has considerable flexibility in terms of the duration of sitting and standing and/or in 'change of positions'." AR 329.

### III. The ALJ's Decision

In a written decision denying Yealey's application for disability benefits on September 23, 2015, ALJ Regina Slater determined that although Yealey was severely impaired by pudendal (pelvic) neuropathy and degenerative disc disease of the lumbar and cervical spines, she suffered only mild limitations in concentration, persistence or pace as a result of depression and anxiety. AR 20-21. Relying primarily on Dr. Cloniger's opinion, the ALJ determined that Yealey had the residual functional capacity (RFC) to perform a light work limited by lifting and carrying 20 pounds occasionally and 10 pounds frequently, standing for two hours at a time for a total of four hours a day, and sitting for one hour at a time for a total of four hours a day. AR 22, 25. (The ALJ also included other exertional and environmental limitations, but because Yealey has not raised any specific challenge to these additional limitations, it is unnecessary to recite them

6

in detail.) Citing the opinion of the vocational expert, the ALJ found that Yealey could perform her past work as an officer manager as that position is "actually and generally performed." AR 27.

## OPINION

Social Security claimants have a statutory right to counsel at a disability hearing. 42 U.S.C. § 406. A claimant may waive the right as long as the ALJ fully explains that right. *Ratulowski v. Astrue*, 380 F. App'x 552, 554 (7th Cir. 2010); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). The Seventh Circuit has held that a proper waiver must contain: (a) an explanation of the benefits of counsel; (b) the possibility of free counsel or a contingency fee arrangement; and © notification of the statutory 25% withholding limitation on attorneys' fees and required court approval of the fees. *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994); *Thompson v. Sullivan*, 933 F.2d 581, 584 (7th Cir. 1991). The Commissioner does not refute Yealey's assertion that ALJ Slater did not inform Yealey of her right to counsel or obtain a valid waiver informing Yealey of the required factors.

When an ALJ does not obtain a valid waiver of counsel, then the case must be remanded for a new hearing unless the Commissioner can establish "that the ALJ fully and fairly developed the record." *Binion*, 13 F.3d at 245-46 (ALJ duty met if he "probes the claimant for possible disabilities and uncovers all of the relevant evidence"). A claimant can rebut the Commissioner's showing that the ALJ adequately developed the record by demonstrating prejudice or an evidentiary gap. *Id.* Prejudice may be shown if the ALJ failed to elicit all relevant information. *Id.* Further, regardless of the validity of the waiver, an ALJ always has a duty to fully and fairly develop the record when the claimant proceeds without counsel. *Binion*, 13 F.3d at 245 ("The

7

ALJ has this same duty to develop the record when a plaintiff is without counsel regardless of whether the plaintiff's waiver of counsel was valid."); *Davis ex rel. J.E.C. v. Colvin*, 2014 WL 4954470, at *7 (E.D. Wis. Oct. 2, 2014) (same).

Yealey argues that both the ALJ and Kellerman failed to develop the record with respect to her non-severe mental limitations, pain, and medication side effects, resulting in an adverse RFC assessment and finding that she could perform her past relevant work as an office manager. A review of both hearing transcripts shows that the ALJ and Kellerman did question Yealey about her pain and some of the side effects that her medications caused. The ALJ also confirmed with Yealey and the medical expert that there was no evidence in the record documenting these complaints during the relevant period. However, neither the ALJ nor Kellerman elicited any testimony from plaintiff about her depression or anxiety or the problems she reported having with memory, concentration, understanding, and following instructions.

In her written decision, the ALJ found that even though Yealey's depression and anxiety were not severe impairments, Yealey had mild limitations in concentration, persistence, or pace as a result of the medications she was taking. AR 20. Specifically, the ALJ noted that even though there was little information in the medical record to support Yealey's reported problems with memory, concentration, understanding, and ability to complete tasks or follow instructions, she was giving Yealey the benefit of the doubt and assessing mild limitations in concentration, persistence, or pace. *Id.* However, the ALJ failed to incorporate these limitations in the RFC or in the hypothetical presented in the interrogatories to the vocational expert, a failure that Kellerman neglected to challenge.

The Court of Appeals for the Seventh Circuit has held that "[w]hen determining a claimant's RFC, the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment." *Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010); *see also O'Connor–Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010) ("Our cases generally have required the ALJ to orient the VE to the totality of a claimant's limitations. Among the limitations the VE must consider are deficiencies of concentration, persistence and pace."). Following this mandate, courts in this circuit consistently have held that an ALJ's unexplained failure to include in the RFC even mild limitations in concentration, persistence and pace warrants remand. *See, e.g., Hovi v. Colvin*, 2013 WL 3989232, at *16 (W.D. Wis. Aug. 2, 2013); *Underwood v. Colvin*, 2013 WL 2420874, at *2 (N.D. Ind. May 30, 2013); *Dross-Swart v. Astrue*, 872 F. Supp. 2d 780, 795 (N.D. Ind. 2012); *Baker v. Astrue*, 2011 WL 3585613, at *5-6 (S.D. Ind. Aug. 15, 2011); *Alesia v. Astrue*, 789 F. Supp. 2d 921, 933-34 (N.D. Ill. 2011). It is particularly important to include such limitations in the RFC when the ALJ considers a claimant's ability to perform past semi-skilled or skilled work, because even mild limitations may preclude such work. *Alesia*, 789 F. Supp. 2d at 934. In this case, the VE reported that Yealey's past work as an office manager is listed as a skilled position in the DOT. Therefore, it is possible that the VE would have reached a different conclusion with respect to Yealey's ability to perform her past work if he had known about her mild limitations in concentration, persistence, or pace.

As a final matter, I note that Yealey challenges the ALJ's decision on the ground that Kellerman was charged with and ultimately plead guilty to tax fraud, embezzlement, and mail fraud in 2015. Pl's Br., dkt. 10 at 9 and 11. I agree with the Commissioner that it is

9

unreasonable to infer that the ALJ would have been on notice of this fact at the time of the administrative hearings in Yealey's case because the State of Illinois issued charges in August 2015—only one month before the ALJ issued her written decision—and the federal government issued charges two months after the ALJ's decision. *See* dkt. #11, exh. #1. However, Yealey raises a good point of her own when she argues that she was prejudiced by Kellerman's representation, because Kellerman was facing criminal charges around the time that the medical and vocational experts submitted their responses to the ALJ's interrogatories. This timing may well have detracted from Kellerman's ability to focus on this case and to advocate zealously on Yealey's behalf (for instance, by thoroughly analyzing the experts' responses, or requesting a supplemental hearing or additional interrogatories that addressed Yealey's mild limitations in concentration, persistence, or pace).

In sum, I find that the Commissioner has not met her burden of demonstrating that the ALJ fully and fairly developed the record with respect to all of the limitations derived from Yealey's non-severe impairments, pain, and medication side effects, which resulted in prejudice to Yealey. Accordingly, the matter must be remanded so the ALJ may fully explore Yealey's limitations and, at a minimum, account for the previously-identified mild limitations in concentration, persistence or pace in the RFC assessment and hypothetical to the vocational expert.

**ORDER**

IT IS ORDERED that the decision of the Commissioner of Social Security denying plaintiff Susan Yealey's application for disability insurance benefits under the Social Security Act is REVERSED AND REMANDED for further proceedings consistent with this opinion. The clerk of court is directed to enter judgment for plaintiff and close this case.

Entered this 19th day of June 2017.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge